RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  9 / 10 / 14
      JPB

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

a

| | |
|---|---|
| JAMES J. DAVIS<br>    LA. DOC. #342249 | DOCKET NO. 14-CV-548; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| ERVING YOUNG, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

<u>REPORT AND RECOMMENDATION</u>

Pro se Plaintiff, James J. Davis, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 and state tort law on March 13, 2014, and amended complaint on July 31, 2014. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("LDOC"), and he is incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. Plaintiff names as defendants Erving Young and Warden Lachney of the Avoyelles Bunkie Detention Center, Nick Bibbee and Tanya Scallan of the Marksville Police Department, Doug Anderson Wayne Austin, Deputy Eric, Nurse Matilda, and two unidentified drivers all of the Avoyelles Parish Sheriff's Office, as well as Julius Williams, Progressive Insurance Company, and Traveler's Indemnity Company. Plaintiff claims that he was denied medical care following an automobile accident, that the defendants filed a fraudulent accident report, false disciplinary report, deprived him of due process as to his disciplinary hearing, wrongfully convicted him of a disciplinary violation, failed to respond to grievances, and wrongfully transferred him to Orleans

Parish Prison.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Plaintiff's Allegations*

Plaintiff alleges that on November 27, 2012, the sheriff's office transport van in which he was a passenger was involved in an auto accident with a vehicle owned by Young & Young Janitorial Service. The janitorial service company is allegedly owned by Deputy/Captain Erving Young of the Avoyelles Bunkie Detention Center. Erving Young was notified of the accident and arrived at the scene. Instead of completing an accident report and documenting the incident, Young ordered the driver of the sheriff's department van and the driver of the janitorial service vehicle to leave the scene. Two hours after the accident, Plaintiff was transported to the hospital for examination.

When transported to the hospital, Plaintiff and another inmate were placed in a "cold and damp holding area" without proper clothing. [Doc. #16] Plaintiff complained about the conditions, and Officer Rabalais ordered that the inmates be returned to the warm waiting room. Plaintiff alleges that Defendant Eric filed a retaliatory disciplinary report for aggravated disobedience and defiance because Plaintiff had refused or complained about the holding area.

On November 30, 2012, Plaintiff was brought before Defendant Lachney for a disciplinary hearing. Plaintiff was denied the right to call Deputy Rabalais and other inmates as witnesses, and he was found guilty and sentenced to lockdown.

On December 4, 2012, Plaintiff was transferred to the hospital due to continued complaints of back pain. The doctor prescribed an extra pillow and mattress. Plaintiff complains that Nurse Matilda denied the extra pillow/mattress because "this was a jail and not [Plaintiff's] home." [Doc. #16]

In the first week of December 2012, Plaintiff requested a grievance form, but his request was ignored. Nonetheless he filed and forwarded an Administrative Remedy Procedure (A.R.P.) form to the sheriff on December 9, 2012. [Doc. #1, p.3] Four days later, Plaintiff was transferred by Sheriff Doug Anderson to Orleans Parish Prison. [Doc. #16, p.5] Plaintiff claims that he sent several letters inquiring about his A.R.P., but never received a reply.

### Law and Analysis

1. **Nurse Matilda / Medical treatment**

Plaintiff alleges that an outside physician prescribed an extra mattress and pillow for Plaintiff's neck and back pain following the auto accident of November 2012. [Doc. #16, p.7] He complains that Nurse Matilda refused to provide him with the recommended treatment. Prison officials violate the Eighth

3

Amendment's prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's serious medical needs, constituting an "unnecessary and wanton infliction of pain." See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal quotations and citation omitted). A prison official acts with deliberate indifference if he "knows of and disregards an **excessive risk** to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994)(emphasis added); see Reeves v. Collins, 27 F.3d 174, 176-77 (5th Cir. 1994)(applying Farmer to medical care claim).

The law is clear that a prison official's disagreement with, or failure to follow, an outside physician's treatment plan or recommendation does not amount to deliberate indifference. See Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999)(The failure of a prison doctor to follow the recommendations of an outside treating physician did not present a material fact issue for deliberate indifference.); Clifford v. Doe, 303 Fed.Appx. 174, 2008 WL 5210663 (5th Cir., December 15, 2008)(fact that medical staff at the prison did not follow the treatment plan recommended by an outside physician did not amount to deliberate indifference). Nurse Matilda did not have to follow the recommendation of the outside physician. Plaintiff does not allege that he was deprived

4

of medication or medical treatment, and his complaint does not allege a wanton disregard by Nurse Matilda for any serious medical needs.

2. **Disciplinary Conviction**

Plaintiff complains that he was written up for a disciplinary violation for aggravated disobedience and defiance for refusing to return to a holding cell area at the Huey P. Long Hospital. [Doc. #16, p.28] Plaintiff admits in his allegations that he told Deputy Eric that he would not return to the "cold, damp holding cell" near a window at the front of the hospital. Plaintiff complains that he was denied due process in the disciplinary proceeding and that he was written up "in retaliation" for refusing to sit in the hospital holding cell.

First, to state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that, but for the retaliatory motive, the complained of incident — such as the filing of a disciplinary report - would not have occurred. Plaintiff cannot establish that he has a constitutional right to sit in the general patient waiting room, with non-incarcerated patients, at the hospital, as opposed to the holding cell specifically created for inmates seeking hospital treatment. Moreover, Plaintiff's allegations do not indicate retaliation. Plaintiff states that, after going to the bathroom, he refused to go back to the holding cell as ordered. That is

precisely what he alleges he was written up for. [Doc. #16, p.21] To the extent that he may claim that he was written up for voicing his complaint about the holding cell, he cannot show that, but for complaining, he would not have been written up. With or without voicing a complaint, he could still have been written up for defiance or disobedience for refusing to comply with an order.

Plaintiff also claims that he was denied due process with regard to his disciplinary proceeding. Prison disciplinary proceedings differ from criminal prosecutions, and prisoners in such proceedings are not entitled to the panoply of rights due a defendant in a criminal trial. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). In the disciplinary hearing process, a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557 (1974). Inmates who are charged with institutional rules violations are entitled to rights under the Due Process Clause <u>only</u> when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. See <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). Such liberty interests may emanate from either the Due Process Clause itself, or from state law. See <u>Ky. Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to

give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the *duration of [a prisoner's] sentence*" may qualify for constitutional protection under the Due Process Clause. Id. at 487 (emphasis added)(a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim); see also Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).

The protections afforded by the Due Process Clause thus do not extend to "every change in the conditions of confinement" which adversely affects prisoners. Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997). Sanctions which may be imposed as a result of disciplinary cases, including various terms of commissary, recreation, and cell restriction, do not implicate concerns that are protected by the Due Process Clause. Id. at 486; Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000). Moreover, an inmate has neither a protected property nor liberty interest in his custodial classification. Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir. 1988) (internal citations omitted). Because the conviction has had no impact on the length of time Petitioner spent or will spend in custody, the protections afforded by the Due Process Clause do not extend to his disciplinary proceedings. See Malchi, Madison, and

7

Moody, supra. Plaintiff cannot state a claim for a due process violation.

### 3. Administrative Grievances

Plaintiff complains that the defendants violated his constitutional rights by failing to respond to grievances. An inmate has no constitutional right to a grievance procedure, and has no due process liberty interest in having his grievance resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005). Additionally, the mere failure of a prison official to follow the prison's own regulation or policy with regard to grievances does not amount to a constitutional violation. See Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986).

### 4. Transfer to Orleans Parish Prison

Plaintiff complains that he was transferred from Avoyelles Parish Jail to Orleans Parish Prison a few days after submitting his administrative grievance. First, Plaintiff's claim regarding his transfer is prescribed. His transfer occurred on December 13, 2012, *after* he filed a grievance. Thus, Plaintiff did not pursue administrative remedies as to the transfer, so the statute of limitations began to run on December 13, 2012.[1] Equitable tolling principles apply to civil rights cases filed under 42 U.S.C. §1983,

---

[1] There is no federal statute of limitations. Accordingly, the forum state's statute of limitations for general personal injuries is used in §1983 claims. See Wallace v. Kato, 549 U.S. 384 (2007); Lopez-Vences v. Payne, 74 Fed. Appx. 398 (5th Cir. 2003). In Louisiana, that limitations period is one year.

such that the time during which a prisoner exhausts his administrative remedies is not counted toward the prescriptive period. See Rotella v. Pederson, 144 F.3d 892, 897 (5th Cir. 1998); Harris v. Hegmann, 198 F.3d 153, 158 (5th Cir. 1999). Since Plaintiff did not exhaust as to the issue of his transfer, the statute of limitations as to that claim expired one year after the transfer - on or about December 13, 2013.

Moreover, even if the claim was not prescribed, it is clear that a prisoner has no constitutional right to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. See Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982).

Additionally, even if Plaintiff's claim was not prescribed, to the extent that he claims he was transferred to Orleans in *retaliation* for filing a grievance, his claim is entirely conclusory. A civil rights plaintiff must allege more than his personal belief that he is the victim of retaliation. See Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). "The inmate must produce direct evidence of motivation or, the more probable

9

scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)(citation omitted). Causation requires an inmate to show that, but for the retaliatory motive, the adverse action would not have occurred. See McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). It is conclusory to claim that the Avoyelles sheriff simply decided to send Plaintiff to the parish jail in Orleans. It is just as likely that Plaintiff was transferred because he had charges pending in Orleans Parish. Plaintiff has not presented allegations that he would not have been transferred "but for" a retaliatory motivation. See Woods, 60 F.3d at 1166.

5. **State Law Claims**

Like the transfer claim, all of Plaintiff's state law claims related to or arising out of the automobile accident of November 27, 2012, are prescribed. Plaintiff had one year from the date of the accident within which to file a tort suit under Louisiana law. The instant complaint was not filed until well after the one year prescriptive period had lapsed.

*Conclusion*

Plaintiff claims regarding his transfer to another facility and his state tort claims are prescribed. Moreover, for the reasons discussed above, he fails to state a claim for which relief can be granted as to his medical treatment, disciplinary conviction, and administrative grievance. **THEREFORE, IT IS**

10

**RECOMMENDED** that Plaintiff's complaint be **DENIED AND DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

THUS DONE AND SIGNED at Alexandria, Louisiana, this _____ day of September, 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE